IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE FLYNN,<br><br>      Petitioner,<br><br>vs.<br><br>J. COLVIN, Superintendent, Mid-State Correctional Facility,<br><br>      Respondent. | No. 9:13-cv-01247-JKS<br><br>MEMORANDUM DECISION |

    Bruce Flynn, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Flynn is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Elmira Correctional Facility. Respondent has answered the Petition, and Flynn has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

    On October 14, 2009, Flynn was charged with second-degree burglary, second-degree criminal use of a firearm, second-degree unlawful imprisonment, and second-degree menacing. On January 6, 2010, Flynn appeared before the Clinton County Court to plead guilty to second-degree burglary and second-degree criminal use of a firearm in full satisfaction of all outstanding charges. On direct appeal of his conviction, the New York Appellate Division described the following facts underlying the charges against Flynn and his subsequent guilty plea:

>     In October 2009, in relation to an incident involving his former paramour, [Flynn] was arrested and arraigned in Town Court. At that time, [Flynn] was apparently represented by attorney Marcia Moss, who apparently had been assigned to him by Town Court. The following week, an indictment was filed and [Flynn] was charged with burglary in the second degree, criminal use of a weapon in the second degree, unlawful imprisonment in the second degree and menacing in the second degree. When [Flynn] was arraigned in County Court, he stated to the court that he did not want Moss to

> represent him, and he submitted an application for assigned counsel as an indigent. County Court determined that, based on his income, [Flynn] was not eligible for assigned counsel as an indigent; the court then entered a plea of not guilty on [Flynn's] behalf and directed [Flynn] to seek retained counsel. At a subsequent appearance, [Flynn] submitted a second application for assigned counsel, which was denied by the court. At [Flynn's] next appearance, after [Flynn] stated that he had been unable to secure counsel because he had been denied access to the telephone and writing materials, County Court adjourned the matter and directed that [Flynn] be provided with access to a telephone and writing materials. The court also ordered [Flynn] to undergo a psychiatric evaluation pursuant to [New York Criminal Procedure Law ("CPL")] article 730.
>
> In late November 2009, County Court arranged for attorney Matthew Favro to represent [Flynn], although the record is not clear as to how that came about. [Flynn] thereafter appeared in court with Favro and confirmed that he had accepted Favro as his attorney. The following month, after reviewing the report of the CPL article 730 examination, County Court found [Flynn] fit to stand trial and Favro thereafter filed various motions and notices on [Flynn's] behalf, including a notice of an affirmative defense of mental disease and defect. Ultimately, on January 6, 2010, [Flynn]—still represented by Favro—pleaded guilty to burglary in the second degree and criminal use of a weapon in the second degree in full satisfaction of the indictment and waived his right to appeal. On [Flynn's] behalf, during the plea hearing, Favro withdrew the notice of an affirmative defense of mental disease and defect.
>
> Throughout January 2010, [Flynn] sent various pro se requests to County Court, including a request to withdraw his plea and a request to have Favro removed as his counsel, although [Flynn] subsequently withdrew those motions. At a subsequent appearance, however, [Flynn], Favro and attorney Edward Narrow executed a consent to change attorneys so that Narrow could represent defendant. Narrow then requested an adjournment of the sentencing and filed a motion to withdraw [Flynn's] plea. County Court denied the motion and thereafter sentenced [Flynn] in accordance with the plea agreement to concurrent prison terms of 10 years, with 2½ years of postrelease supervision, for each of his convictions.

*People v. Flynn*, 939 N.Y.S.2d 16, 167-68 (N.Y. App. Div. 2012).

Through counsel, Flynn appealed his conviction, arguing that the trial court should have granted his motion to withdraw his plea. According to Flynn, Moss's representation of him was not properly terminated until he personally retained Narrow. He therefore alleged that everything that occurred between his arraignment in county court in October 2009 and his retention of Narrow in February 2010—including the entry of his guilty plea—was done in violation of his right to counsel because Moss was not present. Flynn contended that Favro's

2

representation of him did not cure his deprivation of counsel because it was "not achieved through any recognized practice" and, in any event, Favro's representation was ineffective. Flynn also filed a *pro se* supplemental brief arguing that he was denied his right to counsel at arraignment. The Appellate Division unanimously affirmed the judgment against Flynn in its entirety in a reasoned opinion issued on February 23, 2012. *Flynn*, 939 N.Y.S.2d at 169. Flynn filed a counseled application for leave to appeal, which was summarily denied on August 9, 2012. *People v. Flynn*, 975 N.E.2d 918, 918 (N.Y. 2012).

Proceeding *pro se*, Flynn moved to vacate the judgment under CPL § 440.10. In that motion, Flynn argued that: 1) Moss was ineffective because she failed to arrange for Flynn to testify before the grand jury; 2) Favro did not provide competent advice regarding the State's plea offer or make a record of Moss's alleged deficiencies; 3) Flynn was denied his right to testify in the grand jury; 4) Flynn was denied his right to obtain private counsel; 5) the prosecution altered a cassette recording made by Flynn when they transferred that recording to CD; 6) his guilty plea was not voluntary, knowing, or intelligent; and 7) the prosecution committed a *Brady*[1] violation. The county court denied the motion on both procedural grounds and on the merits in a reasoned, unpublished opinion issued on April 11, 2011. Flynn sought leave to appeal. The Appellate Division granted the leave application and appointed counsel to represent Flynn on appeal. By letter dated August 29, 2011, Flynn advised that court that he wished to withdraw that appeal. The Appellate Division granted Flynn's request to withdraw and discontinue that appeal.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

3

Flynn then filed a second *pro se* CPL § 440.10 motion, in which he contended that: 1) the search of his home was invalid; 2) the county court "failed" him by appointing Favro and allowing him to withdraw Flynn's affirmative defense of mental disease or defect and not holding a hearing on his motion to withdraw his plea; 3) the prosecution withheld *Brady* material; and 4) Favro was ineffective for a variety of reasons. The county court denied the motion on both procedural grounds and on the merits. Flynn sought leave to appeal and to expand the record. The Appellate Division denied the requests without comment on April 25, 2013.

Again proceeding *pro se*, Flynn filed a motion for a writ of error coram nobis in the Appellate Division on the ground that he had received the ineffective assistance of appellate counsel. According to Flynn, appellate counsel Alexander Lesyk was ineffective because he did not raise claims that: 1) the police violated Flynn's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by questioning him after he invoked his right to counsel; 2) the police perpetrated fraud because they did not list a cassette tape on the consent form; 3) the police coerced him to sign the consent-to-search form by depriving him of his medication for diabetes; and 4) counsel Favro was ineffective because he: a) advised Flynn that the cassette tape constituted damaging evidence that could be used against him at trial, b) did not move to suppress the tape, and c) did not consult with independent mental health professionals about Flynn's fitness to stand trial. The Appellate Division summarily denied the motion by order dated August 10, 2012. Flynn sought reargument, alleging that certain inmate law clerks who had helped draft his motion were extorting him and retaliating against him by filing defective papers. The Appellate Division denied reargument on June 27, 2013. Flynn then filed a motion to renew and reargue, which was

also denied without comment on July 17, 2013. Flynn also filed a separate "motion for voiding writ of error coram nobis," which the Appellate Division likewise denied on August 21, 2013. Flynn sought leave to appeal the denial of his coram nobis motion, which the Court of Appeals denied on November 19, 2012. *People v. Flynn*, 981 N.E.2d 289, 289 (N.Y. 2012).

Flynn timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on July 31, 2013. 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Flynn raises a number of grounds for relief. For ease in referring to Flynn's claims, the Court will follow the liberal construction and renumbering of claims used in Respondent's answer; namely, Flynn argues that: 1) he was denied his right to testify before the grand jury; 2) he was denied his right to counsel at his arraignment; 3) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 4) he was denied his right to counsel when the police questioned him after his arrest; 5) his guilty plea was unlawfully induced; 6) counsel Favro was ineffective for a number of reasons; 7) the prosecution failed to turn over exculpatory information and withheld *Rosario*[2] material; 8) the court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 9) he involuntarily signed a consent-to-search form; 10) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 11) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without

---

[2] *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961). The term "*Rosario*" is a shorthand reference to the rules of mandatory discovery in criminal cases under New York law.

5

Favro for purposes of determining whether he qualified for the appointment of counsel; 12) he was denied his right to counsel because Moss represented him when the court assigned Favro to represent him; 13) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; and 14) the trial court abused its discretion when it denied without conducting a hearing Flynn's motion to withdraw his guilty plea.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application

of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Exhaustion

Respondent correctly contends that Flynn has failed to exhaust a number of his claims. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Flynn did not present the following claims to the Court of Appeals: 1) the county court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 2) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 3) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; 4) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without Favro for purposes of determining whether he qualified for the appointment of counsel; 5) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 6) he was denied his right to testify before the grand jury; and 7) counsel Favro was ineffective for failing to challenge the sufficiency of the evidence. Likewise, although he claimed on direct appeal that the county court abused its discretion when it denied his motion to withdraw his guilty plea and without holding a hearing and that he was denied his right to counsel because Moss represented him when the court assigned Favro, he raised these claims with reference only to state law and did not raise them in federal constitutional terms.

Accordingly, these claims are unexhausted. Further, his unexhausted claims are procedurally barred. *See Grey*, 933 F.2d at 120-21. Because Flynn may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review.[3] *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

---

[3] This Court has the discretion, but is not obligated, to stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts. *Day v. McDonough*, 547 U.S. 198, 209 (2006); *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). Even if Flynn could establish the requisite good cause for failing to exhaust his claims, which does not appear from his filings, *Rhines* would still require that the Court deny his stay request because,

9

B.  Merits

    1.  *Tollett* Bar

It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty, Flynn forfeited his right to bring claims premised on errors that the trial court made or actions that his counsel should have taken prior to the plea process. The *Tollett* bar thus forecloses the majority of claims raised in Flynn's Petition, including the following claims: 1) he was denied his right to testify before the grand jury; 2) he

---

as discussed *infra*, the claims are "plainly meritless." *Rhines*, 544 U.S. at 277. Likewise, a stay would be futile because, as discussed *supra*, a New York court would deny the claims as procedurally defaulted.

was denied his right to counsel at his arraignment; 3) he was denied due process when counsel Moss conducted his preliminary hearing in his absence; 4) he was denied his right to counsel when the police questioned him after his arrest; 6) counsel Favro was ineffective for a number of reasons; 8) the court denied him poor person status to prevent him from hiring an investigator and obtaining an independent mental health examination; 9) he involuntarily signed a consent-to-search form; 11) his right to counsel was violated because, after Favro was assigned to represent him, he had to appear in court without Favro for purposes of determining whether he qualified for the appointment of counsel; and 12) he was denied his right to counsel because Moss represented him when the court assigned Favro to represent him.

Some district courts within this Circuit have opined that an individual's right to receive *Brady* material cannot be waived, however, notwithstanding the existence of a valid guilty plea. *See United States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, at *9 n. 4 (S.D.N.Y. Apr. 18, 2002) (citation omitted), *remanded on other grounds Sapia v. United States*, 108 F. App'x 661 (2d Cir. Aug. 4, 2004); *see also Brown v. Berbary*, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004); *Fambo v. Smith*, 433 F.Supp. 590 (W.D.N.Y.) (passim), aff'd, 565 F.2d 233 (2d Cir. 1977). These courts have concluded that, where a *Brady* claim may be construed as an attack on the voluntariness of a defendant's plea, it survives the entry of his guilty plea. *See Tollett*, 411 US. at 267. The Court will therefore also consider the merit of Ground 7, which alleges that a *Brady* violation affected the voluntariness of his plea.

2. Remaining Claims

The following claims fall outside the *Tollett* bar and will be addressed in turn: 5) his guilty plea was unlawfully induced; 7) the prosecution failed to turn over exculpatory

11

information and withheld *Rosario* material; 10) his waiver of the right to appeal was unknowing and involuntary because counsel did not explain the consequences of that waiver; 13) he was denied due process because counsel did not ask for, and the trial court did not order, a competency hearing before he pled guilty; and 14) the trial court abused its discretion when it denied without conducting a hearing Flynn's motion to withdraw his guilty plea.

      a. *Involuntary plea*

Flynn argues that his guilty plea was unlawfully induced, unknowing, and involuntary. When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

Flynn alleges that he was lied to about the length and content of the tape recording of the incident and was not given a police incident report. But Flynn provides nothing more than his unsupported assertions in support of this claim. It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g.*, *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

Moreover, the Appellate Division reasonably concluded that Flynn's plea was voluntarily, intelligently, and knowingly made. The appellate court stated:

> Here, [Flynn] made no statements inconsistent with guilt, indicated that he understood that he was forfeiting various rights by pleading guilty and, through his attorney, acknowledged that he was waiving any potential affirmative defenses that may have been available to him. Although [Flynn] indicated that he was taking medication for his mental health disorder, he specifically stated that the medication did not affect his ability to understand the proceedings. In short, there is nothing on this record to indicate that [Flynn's] guilty plea was anything but knowingly, voluntarily and intelligently entered.

*Flynn*, 939 N.Y.S.2d at 169 (citations and footnote omitted).

That conclusion is fully supported by the record, and precludes any relief on that claim here.

        b.    *Unknowing waiver of right to appeal*

Flynn next contends that his waiver of his right to appeal was invalid because his attorney did not inform him of the consequences of signing the waiver of appeal. The waiver form, however, indicates that he "discussed [the waiver of appeal] with [his] attorney, and [was] advised of all [his] legal rights in this matter." In any event, Flynn appealed from his conviction, and the Appellate Division did not deem his appeal waived. *See Flynn*, 939 N.Y.S.2d at 166.

        c.    *Brady violation*

Flynn also alleges that the prosecution withheld evidence in violation of *Brady*. "To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

13

In support of his claim, Flynn identifies only a cassette tape recording that he made of the incident and which the police seized from his home. Contrary to Flynn's assertions, the record does not indicate that the prosecution withheld the tape. Indeed, in his second CPL § 440.10 motion, Flynn stated that his attorney had played a portion of that recording to him.

        d.     *Failure to hold competency hearing before accepting plea*

Flynn additionally contends that the trial court should have conducted a full competency hearing prior to accepting his guilty plea. "A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id*. at 399. The determination turns on whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id*. at 396 (citation omitted).

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375-76 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein v. Henderson*, 706 F.2d 361, 369 (2d Cir. 1983) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts should consider the indicia of incompetence that were before the

trial judge, which may include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports." *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

Here, two certified medical examiners interviewed Flynn and submitted examination reports pursuant to New York CPL Article 730 which indicated that Flynn did not as a result of mental disease or defect lack capacity to understand the proceedings against him or assist in his defense. Prior to accepting his plea, the court confirmed that, although Flynn was taking psychiatric medicine, it did not affect his ability to understand his defense counsel, the proceedings, and the nature of the plea agreement. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). He also gave coherent and clear responses to the court's questioning during the plea allocution. Flynn did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that he could not understand the proceedings or rationally aid in his own defense. Here, there are no indications, other than Flynn's own assertions after the fact, that he could not understand the proceedings or assist in his own defense. This claim therefore provides no basis for relief.

      e.    *Denial of motion to withdraw plea without conducting a hearing*

Finally, Flynn claims that the trial court erred in denying his motion to withdraw his plea without conducting a hearing. As discussed above, however, this Court rejects his claim that his plea was not voluntary, knowing, and intelligent, and relies upon the same reasoning in rejecting his claim with regard to his motion to withdraw his guilty plea. Furthermore, both federal and

state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (collecting cases); *see also Reed v. Brown*, No. 10 Civ. 3072, 2011 WL 498363, at *8-9 (S.D.N.Y. Feb. 14, 2011) (collecting cases). The Second Circuit determined in *Hines* that the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Hines*, 318 F.3d at 162; *see also Medina v. California*, 505 U.S. 437, 442-46 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina*, the Appellate Division's determination on direct appeal that the county court did not abuse its discretion in denying Flynn's motion to withdraw his guilty plea without holding a hearing was not an unreasonable application of clearly established federal law. Therefore, Flynn is not entitled to relief on this claim.

C.     Evidentiary Hearing

Flynn further requests in his Traverse an evidentiary hearing on all of his claims. The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v.*

16

*Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.") "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 413). As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2), *id.* at 1400-01, which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—

17

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Flynn's request in this case does not meet that standard. Nor, based upon the record before this Court, can it be said that the state courts precluded him from developing the factual basis for his claim. *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Moreover, AEDPA requires that, in addition to showing diligence in state court, a petitioner must allege a colorable claim for relief in order to obtain an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474-45 (2007). As discussed above, Flynn has failed to assert a colorable claim for relief as to any of his claims. Accordingly, this Court also must deny Flynn's request for an evidentiary hearing.

## V. CONCLUSION

Flynn is not entitled to relief on any ground raised in his Petition and is not entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a

18

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: December 5, 2016.

                                                    /s/ James K. Singleton, Jr.
                                               JAMES K. SINGLETON, JR.
                                        Senior United States District Judge